IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES WATSON,

                Plaintiff,

vs.                                                       Case No. 22-3056-SAC

DAN SCHNURR and JEFF
ZMUDA, Secretary of Corrections,
                Defendants.

## MEMORANDUM AND ORDER

The plaintiff James Watson pro se has completed and filed a form civil rights complaint for a 42 U.S.C. § 1983 action. ECF# 1. Watson is an inmate at Hutchinson Correctional Facility serving two hard 40 sentences which he characterizes as a life sentence without the possibility of parole. ECF# 1, p. 3; # 2-1, p. 3. Watson's complaint alleges two counts of due process violations in the Kansas Department of Corrections' (KDOC's) establishment and enforcement of Internal Management Policy and Procedure (IMPP) 04-103. This regulation requires each inmate to place 10% of their funds that are earned or from outside gifts into a forced savings account. As alleged, Watson's first count asserts due process violations in the enactment and implementation of IMPP 04-103. Watson's second count similarly asserts a due process violation in KDOC's implementation of the policy that includes pooling the money, limiting interest earnings, and assessing a monthly service fee. In support of his complaint, Watson has filed a memorandum of law laying out his legal arguments and authorities for his action. From what has been alleged and argued, the court does not understand Watson's action to assert any disputed issues of material fact. Instead, his

1

action appears to advance only issues of law that are the same or very similar to ones already decided in this circuit.

**Statutory Screening of Prisoner Complaints**

A court must screen prisoners' complaints which seek relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening court must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for § 1915 dismissals, and this includes the newer language and meaning taken from *Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new

standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made clear, "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

**Procedural Due Process**

The plaintiff's accompanying memorandum of law clarifies the scope of his intended claims. Much of what the plaintiff argues focuses on the fact that he began serving his current sentence before KDOC's enactment of IMPP 04-103 in 2004. That same year the Kansas Court of Appeals, however, denied constitutional challenges to this prison regulation explaining that it "provides for a savings account in which 10% of an inmate's incoming monies less any outstanding obligations, and a specified portion of earnings from work release or private industry employment is deposited and maintained until the inmate's release from custody." *Ellibee v. Simmons*, 32 Kan. App. 2d 519, 85 P.3d 216, *rev. denied*, 278 Kan. 844 (2004). The court noted the savings account always remains the inmate's funds and are turned over upon release or are distributed through the inmate's estate in the event of death. The court held:

3

> In Kansas, pursuant to IMPP 04–103, if an inmate dies while in custody, the money in the inmate's trust account will become part of the inmate's estate. Consequently, the inmate's funds are his or hers upon release or if the inmate dies while incarcerated, they still remain the inmate's funds, they simply pass to the inmate's estate.
> When an inmate challenges a prison regulation as impinging on the inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *LeVier v. Nelson*, 21 Kan.App.2d 172, 175, 897 P.2d 188 (1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 [1989]; *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 [1987]). The Department of Corrections (DOC) has the full power and authority to manage the state's prisons, to encourage healthy and capable inmates in prison labor, and to provide compensation in its best judgment. Requiring 10% of incoming funds to be placed in the inmate's trust account does not violate Ellibee's constitutional rights. The DOC has a sufficient rationale for withholding the money and making it available to Ellibee upon his release or passing it through his estate upon his death. Those funds are necessary "to assist him in readjustment to society at large without further aid from the state treasury." *Cumbey*, 699 P.2d at 1098. The DOC also has legitimate reasons to prevent the free flow of currency within the prison system.
> We find no constitutional or other legal infirmities in the regulation and defer to the expertise of the penal authorities and the presumed validity of the regulation.
> The exact nature of Ellibee's complaint that the administrative grievance procedures violated his due process rights is unclear. It appears Ellibee claims it is a violation of his procedural due process rights that his grievance officer or prison officials did not file a response to his grievance. In its response on appeal, the Secretary of Corrections stated: "The response provided to the inmate by staff at the facility is incorporated herein by reference and made part of this response. On appeal, the inmate offers no evidence or argument that suggests that the response rendered by staff at the facility is wrong." We find no prejudice to Ellibee in the handling of his grievance and the consideration of his complaint.

32 Kan. App. 2d 522-23. Thus, the court in *Ellibee* rejected the due process challenges both procedural (grievance based) and substantive (reasonably related to legitimate penological interests). It also identified the legitimate penological interests behind IMPP 04-103 as not denying inmates of money but as making funds available for the inmate upon leaving prison and for the inmate's estate to address

4

needs and costs at the inmate's death, and as regulating the flow of currency consistent with the prison system's institutional concerns and goals.

In his memorandum of law, the plaintiff first frames a procedural due process claim in that IMPP 04-103 "was written with no available hearing to contest" and with no notice to him until after its enactment and with no means for challenging it. ECF# 2, p. 8. He also complains that the enforcement of the policy constitutes a taking without notice and without due process because it is mandatory and includes earning little or no interest and assesses a monthly one-dollar service fee on the account. Watson's complaint about the interest and service fee simply looks at more details with KDOC's implementation of IMPP 04-103 and does not address any different taking in kind or nature than that already alleged with the forced savings account. Consequently, the court finds that Watson's due process challenges to IMPP 04-103 are not unlike those already argued before and denied by the Tenth Circuit:

> Mr. Sperry's procedural-due-process claim is that he was entitled to a hearing before the money he received was moved to a mandatory savings account. When evaluating whether an individual's procedural-due-process rights were violated, we consider (1) whether the individual possessed a protected property interest and (2) whether the individual was afforded an appropriate level of process. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). We assume, without deciding, that Mr. Sperry had a protected property interest in the money he received from outside of KDOC. *See Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989) (inmate had property interest in "monies received from friends and family outside the prison"). Even so, he received all the process he was due. No hearing was necessary to determine whether 10% of the money received belongs in the savings account. IMPP 04–103 is a general prison policy applicable to all KDOC inmates. There would be no factual issue to resolve if Mr. Sperry were provided a hearing. He does not dispute that he is a KDOC inmate and that the money came from outside the prison. Thus, the matter was effectively decided when the policy itself was enacted. And Mr. Sperry had no right to participate in the enactment process. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its

5

> adoption."); *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enforcement Comm'n*, 889 F.2d 929 (10th Cir.1989) (individual state employees had no procedural-due-process right to a hearing to challenge state law prohibiting all state employees from working in liquor industry).
> We therefore affirm the district court's order granting summary judgment to the Secretary on Mr. Sperry's due-process challenges to the mandatory-savings policy.

*Sperry v. Werholtz*, 321 Fed. Appx. 775, 779 (10th Cir. 2009) (unpublished). As Judge Lungstrum summarized the case law on this question, "no process is due inmates in the implementation of IMPP 04-103; no hearing is needed because there is no factual issue to resolve in the implementation." *Reedy v. Werholtz*, 2011 WL 9174, at *3 (D. Kan. Jan. 3, 2011) (citing *Sperry*, 321 Fed. Appx. at 779; *Ellibee v. Simmons*, 201 Fed. Appx. 612, 615 (10th Cir. 2006)), *aff'd*, 660 F.3d 1270 (10th Cir. 2011). These decisions show the plaintiff's procedural due process arguments are without merit.

For that matter, a prisoner's claim involving a property interest is analyzed under *Sandin v. Conner*, 515 U.S. 472 (1995). "A deprivation occasioned by prison conditions or regulations does not require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484). The plaintiff did pursue a grievance over this matter, and the prison personnel answered his assertions. The plaintiff here alleges no circumstances of his alleged deprivation that rise to the "atypical and significant hardship" standard identified in *Sandin*, and therefore, plaintiff has not been denied due process. Based on all the authority cited above, the court finds the plaintiff's procedural due process arguments fail to state a claim for relief.

**Ex Post Facto Violation**

Though no ex post facto violation is alleged as a constitutional claim in his complaint, the plaintiff's accompanying memorandum of law includes one based on the following. KDOC's 2004 enactment and implementation of IMPP 04-103 occurred after he committed the offenses for which he is incarcerated. KDOC had no prior mandatory savings account policy before 2004. Thus, Watson concludes that the implementation of the forced savings account under these circumstances amounts to an increase in punishment and constitutes an ex post facto violation.

Article I, § 10 of the Constitution prohibits the states from enacting an "ex post facto Law." "[T]he Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dept. of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal quotation marks and citations omitted). The plaintiff does not come forward with any tenable argument for how IMPP 04-103's operation increases any punishment for his crime. As the Kansas Court of Appeals explained, the forced savings account remains the inmate's funds and are turned over with release from prison or are passed to the inmate's estate. *Ellibee*, 32 Kan. App. 2d at 523. Moreover, the plaintiff's argument is not new to this court and has already been rejected. "IMPP 04-103 and 04-109 do not alter the definition of criminal conduct or retroactively change the penalty of any crime. They merely direct how inmate funds are to be saved and used. Plaintiffs have no authority for their suggestion that these policies violate the Ex Post Facto Clause." *Reedy v. Werholtz*, 2011 WL 9174, at *4 (D. Kan. Jan. 3, 2011), *aff'd*, 660 F.3d 1270 (10th Cir. 2011). This regulatory measure serves legitimate penological interests and is not intended to

punish. *See Flinkfelt v. Wall*, 2010 WL 786038, at *3–4 (D.R.I. Mar. 3, 2010). The plaintiff has failed to state a claim for relief here.

**Substantive Due Process**

Here the plaintiff contends the state's penological interest for an inmate having funds upon release and re-entering public society does not serve him, because his sentence is equivalent to one without the possibility of parole. He further opposes the state compelling him to save money for an estate and argues any forced choice constitutes an arbitrary and unreasonable exercise of governmental power. He concludes the forced savings policy denies him substantive due process as it serves no legitimate penological purpose for him.

The Tenth Circuit recently summarized that the Supreme Court recognizes two types of substantive due process claims. *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). The first is when the plaintiff is challenging legislative action that infringes a fundamental right, and the second is when the plaintiff claims a deprivation of life, liberty or property by executive action that is so arbitrary that it shocks the judicial conscience. *Id. See Maehr v. United States Dep't of State*, 5 F.4th 1100, 1117 (10th Cir. 2021). Watson challenges as arbitrary the executive conduct of enacting and enforcing prison regulations that deprive him of property interests. Thus, the shocks-the-conscience standard applies. What is quite apparent is that the plaintiff alleges nothing that approaches any conscience-shocking conduct here. For that matter, courts typically find that prison officials' control over or deductions from an inmate's prison account do not shock the judicial conscience. *See, e.g., Anderson v. Kline*, 2005 WL 327148, at *4 (D. Kan. Feb. 10, 2005) ("Deducting outstanding fees

8

and fines from an inmate trust account without a hearing before each deduction does not 'shock the conscience' of this federal judge. Such conduct cannot be considered as abusive or outrageous."); *Larkin v. Werholtz*, 2008 WL 852126, at *4 (D. Kan. Mar. 28, 2008) ("Limitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction."); *cf. Sperry v. Werholtz*, 2008 WL 4216110, at *3 (D. Kan. Sept. 12, 2008), *aff'd*, 321 F. App'x 775 (10th Cir. 2009) (prison regulation requiring prison wages be placed in mandatory savings account did not shock the conscience).

Watson is not the first to make a substantive due process to IMPP 04-103. The Tenth Circuit in *Sperry* rejected such a challenge this way:

> We first address the substantive-due-process claim. A prison regulation does not violate a prisoner's substantive-due-process rights unless the prisoner proves that the regulation lacks "a rational relation to legitimate penological interests." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (upholding restrictions on visitation). In *Steffey v. Orman*, 461 F.3d 1218 (10th Cir.2006) we upheld a prison regulation that prohibited inmates from receiving money from family members of other inmates because the regulation served a "legitimate penological interest in preventing inmates from using their family members to pay off their drug, gambling or other debts to fellow inmates, or from extorting money from an inmate's family with threats of harm." *Id.* at 1222.
> KDOC has asserted that its mandatory-savings policy is intended to "enhance success" of inmates upon their release from custody. R. Vol. 1 at 62. Mr. Sperry does not contend that this is not a legitimate penological interest. Rather, he contends that this interest does not apply to him because he is serving a life sentence. But Mr. Sperry is not serving a life sentence without parole; there is a possibility that he will be released. He admits that he will "see the parole board [in] 18 years." Id. at 60. Even if his release is "a great many years into the future," Aplt. Br. at 22, KDOC retains a legitimate interest in providing Mr. Sperry with a source of funds upon his release to ease his transition into society. Accordingly, we reject Mr. Sperry's substantive-due-process claim.

9

*Sperry v. Werholtz*, 321 Fed. Appx. at 778. Like in *Sperry*, the plaintiff here considers himself to be serving a life sentence. The plaintiff instead is serving two hard-40 sentences and equates this to a life sentence because he has "no chance at ever being a free man," that is, to live until his release date. ECF# 2-1, pp. 3 and 7. But, like in *Sperry,* the state still has a penological interest in giving Watson a source of funds, as he still has a release date even if it is many years away.

   The court also looks to a recent Tenth Circuit decision holding that the state retains a penological interest in having a source of funds for an inmate serving a long sentence like Watson's because of the possibility of the inmate's sentence being commuted. In *Bird v. Hill*, 857 Fed. Appx. 434, 435 (10th Cir. May 21, 2021), the plaintiff inmate challenged Wyoming's mandatory savings law arguing that he was "unlikely to ever get out of prison" and that Wyoming's exemption only for inmates serving life imprisonment without parole violated his right to equal protection. The Tenth Circuit noted that the Wyoming Supreme Court had rejected the inmate's claims because he remained eligible for commutation and because savings could motivate the inmate to conduct himself as worthy of commutation. 857 Fed. Appx. at 435. The inmate argued on appeal that the Wyoming Supreme Court had subsequently undermined this rationale by saying in another decision that prisoners serving life sentences "had no hope of release, so their good behavior and character improvement were immaterial." *Id.*  The Tenth Circuit rejected the inmate's substantive due process:

>  Mr. Bird alleges a deprivation of substantive due process from Wyoming's requirement for prisoner savings. When a plaintiff challenges a statute based on substantive due process, "we ask whether a fundamental right is implicated." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1182 (10th Cir.

10

> 2009). If not, the statute must simply "bear a rational relation to a legitimate government interest." *Id*. at 1181. When considering the existence of a rational relation, we examine the statute as a whole, not as applied, for a "law need not be in every respect logically consistent with its aims to be constitutional." *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 487-88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
> 
> Mr. Bird has not shown the implication of a fundamental right, so we review the statute for a rational basis. *Davis* might undermine the purpose of the savings requirement for Mr. Bird, but the purpose would remain intact for many other prisoners. So the remoteness of his own chance for commutation does not implicate *Davis* on the claim of substantive due process.

*Bird v. Hill*, 857 Fed. Appx. at 436. Following *Bird,* the rational basis behind the savings requirement here remains intact not just for Watson due to the possibility of his sentence being commuted but remains intact for many other prisoners too. The state has legitimate penological interests in controlling funds received by inmates, in assisting inmates with funds upon their release, and in motivating inmates to show themselves worthy of commutation. *See Bird v. Hill*, 857 Fed. Appx. at 435. The court finds that the plaintiff has stated no valid substantial due process challenge to IMPP 04-103.

IT IS THEREFORE ORDERED that the plaintiff's complaint is dismissed with prejudice for failure to state a claim for relief.

Dated this 4th day of April, 2022, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge